Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone:  (602) 482-4300
Facsimile:   (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Michael Carroll*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Carroll, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Unum Life Insurance Company of America; American Family Mutual Insurance Company; American Family Mutual Insurance Company Disability Plan, | |
| Defendants. | |

Now comes the Plaintiff Michael Carroll (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2.     At times relevant to this action, Plaintiff was a resident of Maricopa County, Arizona.

3.     Upon information and belief, Defendant American Family Mutual Insurance Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Unum Life Insurance Company of America (hereinafter referred to as "Unum").  The specific Unum group long-term disability policy is known as Group Policy No.: 526152 001 (hereinafter referred to as the "Policy").   The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long-term disability insurance for its employees.

4.     Upon information and belief, the Policy may have been included in and part of an employee benefit plan, specifically named the American Family Mutual Insurance Company Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits.  At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

5.     Upon information and belief, Unum functioned as the claim administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Unum.

6.    Unum operated under a conflict of interest in evaluating Plaintiff's long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits.

7.    Unum's conflict of interest existed in that if it found Plaintiff was disabled, it was then financially liable for the payment of his disability benefits.

8.    The Company, Unum and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

*Venue*

9.    Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

***Nature of the Complaint***

10.    Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other non-disability employee benefits he may be entitled to from the Plan, any other Company Plan, and/or the Company as a result of being found disabled in this action.

11.    After working for the Company as a loyal employee, Plaintiff became disabled on or about March 29, 2003, due to serious medical conditions and was unable to work in his designated occupation as a Physical Damage Claim Representative.  Plaintiff has remained continuously disabled as that term is defined in the relevant Policy since the day he became disabled and has not returned to work in any occupation as a result of his serious medical conditions.

12.     Following the onset of his disability, Plaintiff filed a claim for short-term disability benefits which was approved and those benefits have been paid and exhausted.

13.     Following the exhaustion of his short-term disability claim/benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Unum.  Unum made every decision in Plaintiff's long-term disability claim.

14.     Upon information and belief, the relevant Unum Policy and definition of disability governing Plaintiff's long-term disability claim is as follows:

> You are disabled when Unum determines that:
> - You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury, and
> - You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

15.     In support of his claim for long-term disability benefits, Plaintiff submitted to Unum medical evidence which supported his allegation that he met any definition of disability as defined in the relevant Policy.

16.     Unum approved Plaintiff's long-term disability claim and paid him disability benefits for *over eleven (11) years,* through November 6, 2014, when it terminated Plaintiff's disability claim and benefits without any medical documentation supporting its allegation that Plaintiff's medical conditions had improved in such a way that it would have allowed him to return to any type of gainful occupation.

17.     During the period of time Plaintiff was receiving long-term disability benefits, he also applied for, was approved for and is currently receiving Social Security disability benefits through the Social Security Administration (hereinafter referred to as "SSA").

18.     Plaintiff informed Unum that his claim for Social Security disability benefits had been approved and he submitted to Unum documentation from the SSA which confirmed the approval.

19.     The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of March 28, 2003, Plaintiff's alleged disability onset date.  Plaintiff's evidence was so persuasive that the Social Security Administration approved his claim without him even needing to attend a hearing before an Administrative Law Judge.

20.     The SSA's definition of disability is more stringent and difficult to meet than the aforementioned definition of disability in the Unum Policy for the first 24 months of disability and substantially similar to the Policy's definition of disability after the first 24 months of disability.  Therefore, the SSA's approval of Plaintiff's claim and the fact that SSA has continued to pay him benefits for so many years is relevant evidence for this Court to consider with regard to the unreasonableness of Unum's decision to terminate and deny Plaintiff's claim and benefits.

21.     In a letter dated November 7, 2014, Unum informed Plaintiff that it was terminating his long-term disability benefits beyond November 6, 2014.

22.      As part of its review of Plaintiff's long-term disability claim, Unum obtained medical records only "paper reviews" of Plaintiff's claim from two physicians named Bryan Hauser, M.D. and Charles McDonald, M.D.

23.     Upon information and belief, Plaintiff alleges Drs. Hauser and McDonald may be Unum employees.  As a result, Plaintiff alleges Drs. Hauser and McDonald may have an incentive to protect their own employment with Unum by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Unum and which supported Unum's denial of Plaintiff's claim

24.     Plaintiff questions the independence, impartiality and credibility of Unum's own employees to fully and fairly review his claim and he believes these consultants' opinions are adversarial because of their conflicts of interest as Unum employees.  Plaintiff believes Unum's financial conflict of interest as referenced *supra*, is a motivating factor as to why it referred Plaintiff's claim to its own employees for review.

25.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Unum's November 7, 2014 termination of his benefits and submitted additional medical, vocational and lay-witness evidence supporting his appeal and his allegation that he is disabled and meets the definition of disability in the Policy.

26.     Plaintiff submitted to Unum a July 22, 2015 narrative letter authored by his board certified treating physician who opined, "It is my opinion, based on [Plaintiff's] test results and my clinical examination that he is unable to work in any occupation and has not been able to work since he last worked many years ago.  It is also my opinion that due to his medical conditions, [Plaintiff] will be unable to work in any occupation indefinitely."

27.     Plaintiff also submitted to Unum a Functional Capacity Evaluation report dated May 15, 2015, wherein after an extensive several hour evaluation, a qualified physical therapist concluded that, "…[Plaintiff] would not be able to function at a ***sedentary work category***." (Original emphasis).

28.     Further supporting his claim, Plaintiff submitted a vocational report from a certified vocational expert dated July 24, 2015, who after reviewing Plaintiff's aforementioned evidence, the definition of disability in the Policy as well as interviewing him concluded, "[Plaintiff] remains disabled and is not able to work in any occupation that may exist in the national economy.  He continues to meet the definition of disability set forth in his policy."

29.     Plaintiff also submitted updated medical records from each of his treating providers and a list of his current medications, as well as the side effects they cause and the impact they have on his ability to work in any occupation or in any work environment.

30.     In addition, Plaintiff submitted to Unum a complete copy of his Social Security disability claim file, received from the Social Security Administration.

31.     As part of its review of Plaintiff's claim for long-term disability benefits, Unum obtained a medical records only "paper review" of Plaintiff's claim from one of its own employees, Michael Geer, M.D.  Unum did not disclose the name of this reviewing physician or his report to Plaintiff during its administrative review of his claim.

32.     Plaintiff alleges that as a Unum employee, Dr. Geer may have an incentive to protect his own employment with Unum by providing medical records only "paper reviews," which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to Unum and which supported the denial of Plaintiff's claim.

33.     Plaintiff questions the independence, impartiality and bias of Unum's own employee to fully and fairly review his claim and he believes Dr. Geer's opinions are adversarial because of his conflict of interest as a Unum employee.  Plaintiff believes

Unum's financial conflict of interest as referenced *supra*, is a motivating factor as to why it referred Plaintiff's claim to its own employee for review.

34.     In a letter dated November 20, 2015, Unum informed Plaintiff it was denying his claim for long-term disability benefits.

35.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Unum's November 20, 2015 denial of his claim.

36.     In support of his appeal and claim for long-term disability benefits, Plaintiff submitted to Unum additional medical and lay-witness evidence which demonstrated that he met any definition of disability set forth in the Policy.

37.     Plaintiff submitted to Unum a February 11, 2016 narrative letter authored by his board certified treating physician who opined, "I do not think [Plaintiff] can successfully work a full time job even in a sedentary position…"

38.     Plaintiff also submitted to Unum two (2) sworn affidavits authored by himself and his wife, who both confirmed that he is unable to work in any occupation and that his medical conditions had not improved in any meaningful way since the date he originally became disabled.

39.     Upon information and belief, Plaintiff alleges that as part of Unum's review of his claim, it again obtained a medical records only "paper review" of Plaintiff's claim from Michael Geer, M.D.

40.     Unum violated ERISA, specifically 29 C.F.R § 2560.503-1(h)(3)(v), when it retained the same reviewing medical professional, Dr. Geer, to review Plaintiff's claim at two separate levels of review.

41.     As alleged *supra,* Plaintiff believes Dr. Geer is an employee of Unum and therefore has an incentive to protect his own employment with Unum by providing medical

records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to Unum and which supported the denial of Plaintiff's claim.

42.     In a letter dated February 9, 2016, in order to engage Unum in a dialogue so he could perfect any alleged deficiencies in his claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Unum and the opportunity for him and his treating physicians to respond to the reviews prior to Unum rendering a determination in his claim.

43.     Prior to rendering its final denial in Plaintiff's claim, Unum never shared with Plaintiff the medical records only "paper review" authored by Dr. Geer so he could respond to the report and perfect his claim.  Unum's failure to provide Plaintiff with the opportunity to respond to Dr. Geer's report is an ERISA procedural violation, precluded a full and fair review pursuant to ERISA and also violates Ninth Circuit case law.

44.     In a letter dated April 14, 2016, Unum notified Plaintiff it had denied his claim for long-term disability benefits pursuant to the Policy.  In the letter, Unum also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

45.     In Unum's April 14, 2016 denial letter, it fails to reference the sworn affidavit authored by Plaintiff's wife, which was submitted to Unum during its administrative review of Plaintiff's claim.

46.     Upon information and belief, Unum's April 14, 2016 denial letter confirms that it failed to provide a full and fair review and in the process committed several ERISA procedural violations.  Unum violated ERISA for numerous reasons including completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most,

if not all of Plaintiff's reliable evidence which proved that he met any definition of disability of disability in the Policy.

47.     In evaluating Plaintiff's claim on appeal, Unum owed him a fiduciary duty and it had an obligation pursuant to ERISA to administer it "solely in [his] best interests and other participants" which it failed to do. [1]

48.     Unum failed to adequately investigate and failed to engage Plaintiff in a dialogue during the appeal of his claim with regard to what evidence was necessary so that Plaintiff could perfect his appeal and claim.  Unum's failure to investigate the claim and to engage in this dialogue and to ask for and/or obtain the evidence it believed was necessary and critical to perfect Plaintiff's claim is an ERISA procedural violation, it also violates Ninth Circuit case law and is a reason he did not receive a full and fair review.

49.     Plaintiff alleges Unum provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to have Plaintiff's claim reviewed by a truly independent medical professional who was not a Unum employee; by failing to consider the sworn affidavit submitted to Unum by Plaintiff's wife; by failing to adequately evaluate and consider the consistent and ongoing approval of Plaintiff's SSA claim; by failing to credit Plaintiff's reliable evidence; by failing to obtain an Independent Medical Examination when the policy allowed for one which raises

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

legitimate questions about the thoroughness and accuracy of its review and denials; by providing biased and one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by him and/or by de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's subjective and self-reported complaint/symptoms; by failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; by failing to engage Plaintiff in a dialogue so he could respond to the reviewing physicians' reports and submit the necessary evidence to perfect his claim and by failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

50.    Plaintiff alleges a reason Unum provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to its conflict of interest that manifested as a result of the dual roles Unum undertook as the decision maker and the payor of benefits.  Unum's conflict of interest provided it with a financial incentive to deny Plaintiff's claim and when it did, it saved itself money.

51.    Plaintiff is entitled to discovery regarding Unum's aforementioned conflicts of interest.  Plaintiff is also entitled to discovery regarding the conflicts of interest of any third party vendor hired by Unum to retain a reviewing medical professional in Plaintiff's claim and of *any* individual who reviewed his claim.  The Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or any ERISA procedural violation which may have impacted or influenced Unum's decision to deny his claim.

52.    With regard to whether Plaintiff meets the definition of disability set forth in the Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even

if the Court concludes the Policy confers discretion, the unlawful violations of ERISA committed by Unum as referenced herein abused any discretion that may have been afforded in the Policy and are so flagrant that they justify *de novo* review.

53.     As a direct result of Unum's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost long-term disability benefits, in addition to other potential non-disability employee benefits he may be entitled to receive through or from the Plan, from any other Company Plan and/or the Company as a result of being found disabled.   Plaintiff believes that other potential non-disability employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for him and his family/dependents.

54.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid disability and non-disability employee benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

55.     Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for the losses he has incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order finding that the evidence in Plaintiff's claim is sufficient to prove that he meets the definition of disability set forth in the relevant Plan and/or Policy and that he is entitled to these benefits, and any other non-disability employee benefits he may be entitled to as a result of that Order, from the date he was first denied these benefits through the date of judgment with prejudgment interest thereon;

1        B.    For an Order directing Defendants to continue paying Plaintiff the

2   aforementioned benefits until such a time as he meets the conditions for the termination of

3   benefits;

4        C.    For attorney's fees and costs incurred as a result of prosecuting this suit

5   pursuant to 29 U.S.C. §1132(g); and

6        D.    For such other and further relief as the Court deems just and proper.

7       DATED this 20th day of May, 2016.

8

9       SCOTT E. DAVIS. P.C.

10      By:   */s/ Scott E. Davis*
                   Scott E. Davis

11                   Attorney for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26